# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| MARK C. DAUGHERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DR. DAVID LUDFORD, DR. ARTHUR FUNK, PERSONAL REPRESENTATIVE FOR THE ESTATE OF DR. OBAISI, CYNTHIA WHITMER, RN, CHRISTINE AGUAYO, LPN, NICOLE MCCLUSKEY N/K/A NICOLE BONNELL, TONYA WOHLFORD, RN, BRADLEY WAGERN, RN, SUE CALHOUN, CNII, MICKEY ABENS, RN, KRISTA TORRES, RN, DAMILOLA OREMAKINDE, RN, JOHN VARGA, DAVID GOMES, and WEXFORD HEALTH SOURCES, INC., | ) No. 18 C 50088 ) ) Judge John J. Tharp, Jr. |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this case, Mark C. Daugherty, was incarcerated at Dixon Correctional Center and then at Sheridan Correctional Center from April 2015 to June 2018. He alleges that as the result of failures to treat his progressive loss of vision in his right eye, he lost central vision and developed compromised peripheral vision. Mr. Daugherty brings claims of deliberate indifference to his serious medical condition and intentional infliction of emotional distress against a variety of defendants, including nursing staff, doctors, and the wardens at Dixon and Sheridan, and claims based on *respondeat superior* and an unconstitutional policy, custom or practice as to Wexford Health Sources, the vendor under contract to provide medical care for IDOC. Though Mr. Daugherty filed several grievances regarding the delays in his care, he did not inform staff

about the seriousness of his vision loss and actively refused medical assessment on multiple occasions. Once his condition was apparent, he saw three doctors in a period of five months. Because Mr. Daugherty has not pled sufficient facts to plausibly show that the defendants violated his Eighth Amendment rights, defendants' motions to dismiss are granted.

## BACKGROUND[1]

Mr. Daugherty was incarcerated at Dixon Correctional Center beginning on or about April 8, 2015. He had a medical exam on December 23, 2015 that indicated that his vision was normal. Second Amended Complaint ("SAC") ¶ 22, ECF No. 100. Mr. Daugherty first reported blurry vision in his right eye at a sick call with defendant nurse Cynthia Whitmer on July 20, 2016. Her notes from the appointment indicate that he had been experiencing blurry vision for about two weeks but did not have any pain or injury. *Id.* Ex. C. Nurse Whitmer entered a referral to an eye doctor. Mr. Daugherty returned for a sick call on August 8 and was told that he had been placed on a wait list to see an eye doctor. *Id.* ¶ 24. When Mr. Daugherty returned to sick call on September 14, 2016 to inquire about when he would be seen by an eye doctor, defendant nurse Christine Aguayo told him that he was on a wait list to see an eye doctor. Her notes from the appointment indicate that Mr. Daugherty declined any further assessment. *Id.* Ex. E. Mr. Daugherty received a memo from defendant Nicole McCluskey on September 20 telling him that he was on a wait list to see an eye doctor. On January 27, 2017, Mr. Daugherty filed a grievance complaining of the delay in seeing an eye doctor, stating that he was seen by a nurse in August "in regards to my ever diminishing eye-sight,"[2] had not been seen by an optometrist in the intervening six months, and

---

[1] The facts set forth are taken from the Second Amended Complaint and its exhibits.

[2] There is no allegation in the SAC or reference to any medical record suggesting that, to this point, Mr. Daugherty had ever complained to medical staff at Dixon that his eyesight was "diminishing." Rather, what he had reported at this stage is that his eyesight was "blurry."

sought to "be seen by a optometrist within one month of the date of this grievance & have my impairments diagnosed & be prescribed corrective lenses or provided other types of treatment by a trained optometrist." *Id.* Ex. G. The grievance was denied as moot because defendant Dr. Ludford had begun his employment as an optometrist with IDOC in February 2017, was beginning to see patients, and Mr. Daugherty was on the wait list to see him. *Id.*

On March 9, 2017, Mr. Daugherty again returned to sick call. The SAC states that he told defendant nurses Tonya Wohlford and Amelia King that he had been waiting to see an eye doctor for nine months and that his eyesight was worse. *Id.* ¶ 28. The nurses' notes from this appointment indicate that Mr. Daugherty could read and identify objects, did not report any pain or discomfort, and that he walked away from the appointment because he could not be seen by an eye doctor that day. *Id.* Ex. H. On March 13, Mr. Daugherty received another memo from Ms. McCluskey noting that he was on the wait list to see an eye doctor. *Id.* ¶ 29.

On April 6, 2017, Mr. Daugherty was examined by Dr. Ludford, the IDOC optometrist hired in February 2017. The SAC asserts that "[b]y the time he was actually examined, he had lost central vision" in his right eye. *Id.* ¶ 30. Dr. Ludford's notes reflect his assessment that a macular lesion had caused the loss of central vision and that "patient noticed loss of central vision 8/16 – no changes since." *Id.* Ex. K. Dr. Ludford recommended a referral to a local ophthalmologist, whom Mr. Daugherty saw on May 8, 2017. The ophthalmologist, Dr. Hanlon, recommended that Mr. Daugherty be immediately referred to UIC. *Id.* Paperwork indicates that Mr. Daugherty's referral to UIC was approved on May 15. *Id.* The SAC states that Mr. Daugherty was supposed to have an appointment at UIC on May 24, 2017, "but the appointment was missed due to the negligence of the Defendants." *Id.* ¶ 33.

Mr. Daugherty was transferred from Dixon to Sheridan Correctional Center on August 2,

2017. Two exhibits to the SAC indicate that Mr. Daugherty was seen for medical appointments on August 18 and August 20. *Id.* Exs. L & M. The SAC states that "on August 18, 2017 Mr. Daugherty was noted by the Defendants to develop central vision blindness and compromised peripheral vision blindness" in the affected eye. *Id.* ¶ 36. The notes from that same appointment indicate a diagnosis of macular degeneration and that Mr. Daugherty had "missed appointment at UIC retina clinic 5-24-17." The notes further state: "Please contact Barbara Jordan at UIC (email). If no new [appointment] within few days, refer to local retina clinic." *Id.* Ex. L.

Mr. Daugherty filed a second grievance on August 21, 2017 describing his treatment at Dixon. He stated that the local ophthalmologist he had seen told him "that I needed to see a Retina specialist, Imediately, due to the loss of eyesight in my right eye" but that "on 8/21/2017 Nurse Ashlee McDowell at Sheridan CC contacted the liaison at UIC per the Medical Director's orders. The liaison informed Nurse Ashlee McDowell, the person responsible that works for Wexford at Dixon CC did not follow established policies, failing or refusing to send the referral form from the outside medical provider." *Id.* Ex. N. The grievance paperwork indicates that it was received on September 18, and Mr. Daugherty received a response on September 28. By the time he received a response, he had already been to see the UIC specialist on September 19. "When he presented for an appointment at UIC, he noted a loss of central vision in his right eye, as well as pain in the eye and head." *Id.* ¶ 40. The SAC does not state facts regarding what, if any, treatment Mr. Daugherty received.

Mr. Daugherty filed two additional grievances, the first on October 7, 2017 complaining that Dr. Ludford failed to obtain an appointment for him at UIC,[3] and the second on December 8,

---

[3] The grievance was denied because Mr. Daugherty did not reference the dates of his appointments, SAC ¶ 38, and therefore staff could not determine how long the delay had been.

2017 requesting his medical records.[4] Mr. Daugherty was released from Sheridan on June 22, 2018. He alleges that he was "at the mercy of Defendants' care from April 8, 2015 to June 22, 2018, with permanent blindness and recurring pain to show for it. Had his access to proper treatment been provided in a timely fashion, the continuing unconstitutional harm he now experiences could have been avoided." *Id.* ¶ 41.

Mr. Daugherty filed this action on March 12, 2018. His motion for attorney representation was granted in April 2018, and his counsel filed two amended complaints, the first in July 2018 and the second in December 2018.[5] The SAC names as a defendant 16 individuals (virtually every individual who came into contact with Mr. Daugherty in connection with his complaints about his vision) and Wexford Health Sources, Inc. Each of the defendants has filed a motion to dismiss the SAC for failure to state a claim upon which relief may be granted. In his response to these motions, Mr. Daugherty voluntarily withdrew his official capacity claims against the individual defendants and seeks to proceed against them only in their individual capacities. Pl.'s Resp. MTDs at 3, ECF No. 169.

**DISCUSSION**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility

---

[4] Mr. Daugherty's request for his medical records was denied until he was in his last month of incarceration. SAC ¶ 39.

[5] Motions to dismiss the First Amended Complaint were stricken when leave was granted to file the Second Amended Complaint. ECF No. 98.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680-82. The court may also consider facts set forth in a complaint that undermine the claim alleged, *see Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992), and a plaintiff may "plead himself out of court" by alleging facts establishing that a defendant is entitled to prevail on a motion to dismiss. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

The Eighth Amendment requires prison officials to "provide inmates with medical care that is adequate in light of the severity of the condition and professional norms." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). To state a claim under § 1983, Mr. Daugherty must show that he had an objectively serious medical condition and that the defendants were deliberately indifferent to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). While a "delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain," *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010), deliberate indifference is distinct from medical malpractice or negligence and requires "a sufficiently culpable state of mind" such that a prison official "knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Arnett*, 658 F.3d at 751.

Although the SAC never specifically identifies the condition alleged to have compromised Mr. Daugherty's vision,[6] the defendants do not dispute that Mr. Daugherty's medical condition

---

[6] As noted above, notes from an appointment at Sheridan on August 20, 2017 indicate a diagnosis of macular degeneration. "Dry macular degeneration" is an eye disorder that causes blurred or reduced central vision due to thinning of the macula, the part of the retina responsible for clear vision in the direct line of sight. "Wet macular degeneration" is characterized by blood vessels that grow under the retina and leak. *See generally Dry Macular Degeneration*, Mayo Clinic

was objectively serious. Rather, they seek dismissal on the ground that the SAC does not allege facts that establish the personal involvement and deliberate indifference of each defendant. The Court agrees that for most of the defendants, the facts in Mr. Daugherty's complaint do not plausibly show that they were subjectively aware of how serious his medical condition was, such that their treatment would constitute deliberate indifference. The one exception, Dr. Ludford, was aware of the extent of Mr. Daugherty's condition and immediately referred him to a specialist. The delays in seeing that specialist are not imputable to any particular defendant and do not rise to the level of a custom, policy, or practice that would implicate Wexford.

### A. Defendants Lance, Wagner, Calhoun, Abens, Torres, and Oremakinda

As to six of the defendants, Heather Lance, Bradley Wagner, Sue Calhoun, Mickey Abens, Krista Torres, and Damilola Oremakinda, Mr. Daugherty alleges no specific facts, but only conclusory allegations. He states that Ms. Lance "knew that Mr. Daugherty had complaints of blurry vision but failed to provide the Plaintiff with access to adequate medical care and treatment," SAC ¶ 31, but fails to mention Ms. Lance otherwise except to say that she is an IDOC nurse. As to Mr. Wagner, Ms. Calhoun, Ms. Abens, Ms. Torres, and Ms. Oremakinda, the SAC alleges only that these defendants worked for IDOC and "failed to arrange to have Mr. Daugherty seen at UIC when such medical treatment was recommended and approved," *id.* ¶ 35.[7] Mr. Daugherty provides no details of any interaction with any of these defendants, however. The Court is therefore unable to conclude that these defendants plausibly knew of a substantial risk of harm to Mr. Daugherty and acted in disregard of that risk with a sufficiently culpable state of mind. And, indeed, even the

---

(June 28, 2019), https://www.mayoclinic.org/diseases-conditions/dry-macular-degeneration/symptoms-causes/syc-20350375.

[7] Mr. Daugherty would have been in the care of the Sheridan-based defendants starting on August 2, 2017.

7

SAC alleges only that it was through the "negligence" of the undifferentiated defendants that Mr. Daugherty's appointment was missed; again, negligence does not satisfy the deliberate indifference standard. *See Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998) ("deliberate indifference . . . is more than negligence and approaches intentional wrongdoing").

### B. Defendants Whitmer, Aguayo, McCluskey, King, and Wohlford

Defendant Cynthia Whitmer was the first medical professional to whom Mr. Daugherty reported any issue with his vision. At sick call on July 20, 2016, Mr. Daugherty told Nurse Whitmer that his right eye was "blurry." He reported no injury to his eyes and was not experiencing pain. In response to Mr. Daugherty's complaint of blurry vision, Nurse Whitmer made an entry to refer him to an eye doctor. That action was an entirely reasonable response to a complaint about blurry vision, and Mr. Daugherty provides no basis to suggest that Nurse Whitmer had any reason to know at that point that he was suffering from a condition that threatened his eyesight. Mr. Daugherty does not allege that he was beginning to go blind at this point, nor any other facts that would have put the defendants on notice that his medical condition required something more urgent than a routine appointment with an eye doctor. (That is true not only with respect to Nurse Whitmer; the allegations of the SAC and the medical records they refer to show that Mr. Daugherty did not claim that he was losing his vision until he filed his first grievance in late January 2017).

Mr. Daugherty saw Christine Aguayo at sick call on September 14, 2016 for what the SAC terms "problems and a worsening of his vision." SAC ¶ 25. The SAC does not allege that Mr. Daugherty informed Nurse Aguayo that his vision was worsening, however, and her notes from the sick call indicate that Mr. Daugherty "just want[ed] to know" when he would see the eye doctor, that he was told that he was on the list to be seen by an eye doctor, and that he declined further assessment. *Id.* Ex. E. This encounter did not put Nurse Aguayo on notice that Mr.

8

Daugherty was suffering from a serious eye condition that required immediate attention.

As for defendant Nicole McCluskey, the SAC alleges only that she sent two memoranda to Mr. Daugherty advising him that he was on a wait list to see an eye doctor. *Id.* ¶¶ 26, 29. Mr. Daugherty does not allege that Ms. McCluskey knew any specifics about his vision or that she had any control over when he would be seen by a doctor. These allegations fall well short of plausibly alleging deliberate indifference on Ms. McCluskey's part.

Unlike defendant nurses Whitmer and Aguayo, the SAC does at least allege as to defendant nurses Amelia King and Tonya Wohlford that Mr. Daugherty advised them that his vision was deteriorating. These defendants are alleged to have seen Mr. Daugherty on March 9, 2017, when Mr. Daugherty returned to sick call "to inquire [about] the status of his request to be seen by an eye doctor . . . not[ing] that it had been nine months since a referral was put in for his request for an examination." *Id.* ¶ 28. But while Mr. Daugherty alleges that he told the nurses that his eyesight was worse, the nurses' notes from the sick call indicate that he was still able to read and identify objects, denied that he was in any pain, refused to make the required $5 co-payment and "walked off since he could not be seen by eye doctor today." *Id.* Ex. H. These allegations similarly fail to plausibly show that either of these nurses subjectively knew that Mr. Daugherty was suffering from a serious medical condition or that they were objectively unreasonable in failing to recognize that he needed to see an eye doctor immediately. It bears noting in this regard that at the time of their encounter with Mr. Daugherty, an optometrist for the Dixon facility had recently been hired and was seeing patients; they knew, then, that Mr. Daugherty would be seen in relatively short order—and he was.

With respect to all of these defendants, moreover, the Seventh Circuit has observed that, absent a life-threatening emergency, delays in treatment are inevitable and are even more likely in

a prison environment. *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). Other courts in this Circuit have therefore found that "prison officials are not deliberately indifferent when they place inmates on a waiting list for care, despite the natural delays."[8] *Walker v. Ghosh*, No. 13-CV-01354, 2015 WL 1397982, at *5 (N.D. Ill. Mar. 25, 2015) (collecting cases). Mr. Daugherty has not alleged that these defendants had any control over when he would be seen after being placed on the wait list. Despite Mr. Daugherty's eagerness to be seen by an eye doctor, he twice refused further assessment by medical staff that might have revealed his deteriorating vision and sped his referral to an outside specialist. Given the information available to the medical staff, however, placing Mr. Daugherty on a wait list to see an eye doctor was a reasonable response and does not evince deliberate indifference.

**C. Defendants Funk, Obaisi, and Ludford**

Mr. Daugherty similarly fails to allege any specific facts against the medical directors at Dixon and Sheridan, Dr. Funk and Dr. Obaisi, that plausibly suggest that they were deliberately indifferent to his plight. As to Drs. Funk and Obaisi, the SAC alleges only that Dr. Funk "oversaw and approved of Mr. Daugherty's continuing deficient treatment," SAC ¶ 42, and that Dr. Obaisi "failed to arrange to have Mr. Daugherty seen at UIC when such medical treatment was recommended and approved," *id.* ¶ 35. Mr. Daugherty does not allege that either doctor ever saw or treated him. According to Exhibit K, moreover, Dr. Funk ***approved*** Mr. Daugherty's referral to UIC while he was housed at Dixon within a week after it was recommended by Dr. Hanlon, the local ophthalmologist. And when Mr. Daugherty was transferred to Sheridan, and therefore into Dr. Obaisi's care, on August 2, 2017, he was seen by a specialist at UIC just over a month later.

---

[8] Ms. McCluskey, as nonmedical staff, was also entitled to rely on the health professionals' judgment. *See Berry*, 604 F.3d at 440.

Neither Dr. Funk's nor Dr. Obaisi's actions here were constitutionally deficient. *See Forstner v. Daley*, 62 F. App'x 704, 707 (7th Cir. 2003) (doctors who approved referrals were not deliberately indifferent when there was no indication that they were personally responsible for delays in care).

As for Dr. Ludford, he first saw Mr. Daugherty on April 6, 2017 and immediately referred him to a local ophthalmologist, who in turn referred him to a specialist at UIC. SAC ¶¶ 30-31. The SAC alleges that Mr. Daugherty missed his appointment at UIC "due to the negligence of the Defendants," *id.* ¶ 33, but does not allege that Dr. Ludford personally prevented him from attending the appointment. Even if attributable to Dr. Ludford, at most this allegation rises to the level of a mistake or negligence, far short of the "sufficiently culpable state of mind" required for deliberate indifference. Dr. Ludford saw Mr. Daugherty within two months of his employment at IDOC and referred him to an ophthalmologist. Because Mr. Daugherty has not alleged that his injury was readily apparent and that Dr. Ludford "either ignored the injury or deliberately failed to provide proper treatment, his arguments fail." *Jones v. Van Fleit*, 49 F. App'x 626, 628 (7th Cir. 2002).

### D. Defendants Varga and Gomez

Mr. Daugherty alleges that John Varga and David Gomez, the wardens of Dixon and Sheridan, respectively, "oversaw and approved of Mr. Daugherty's continuing deficient treatment." SAC ¶ 42. Mr. Daugherty does not, however, allege any facts that would support these defendants' awareness of his condition or personal involvement in delaying his treatment. At most, the exhibits to the SAC indicate that Wardens Varga and Gomez concurred in the resolution of Mr. Daugherty's first and second grievances, *id.* Exs. G & N, but even the text of these grievances does not contain information that would give rise to the inference that the wardens were aware of a serious risk to Mr. Daugherty and consciously disregarded that risk.

11

**E. Wexford**

As to defendant Wexford, Mr. Daugherty alleges both an unconstitutional policy, custom, or practice and a *respondeat superior* theory of liability. The *respondeat superior* claim may not proceed, as the Seventh Circuit has made clear that "a private corporation cannot be held liable under § 1983 unless it maintained an unconstitutional policy or custom." *Perez*, 792 F.3d at 780.

The Eighth Amendment claim against Wexford also fails. Although the Court has found that Mr. Daugherty has no claim against any of the individual defendants, "Wexford may still be liable if its 'institutional policies [were] themselves deliberately indifferent to the quality of care provided' and that deliberate indifference caused a constitutional violation." *Guerrero v. Wexford Health Sources, Inc.*, No. 15-CV-5064, 2020 WL 733053, at *7 (N.D. Ill. Feb. 13, 2020) (quoting *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc)). The SAC fails at the threshold. It broadly alleges that Wexford maintains a policy of deliberate indifference to the medical needs of prisoners—that is, a policy actually intended to deny reasonable medical care to all prisoners—but the facts alleged in support of that conclusory claim, which concern only Mr. Daugherty's treatment, do not begin to plausibly support an inference that such a policy, custom, or practice exists. Mr. Daugherty doesn't point to the existence of any such written policy, of course; what he essentially alleges is that Wexford's custom or practice is sufficiently consistent to infer its adoption of such a policy sub silencio. Wexford's conduct with respect to a single prisoner, however, is insufficient to plausibly infer that it maintains the alleged policy of deliberate indifference to the medical needs of all prisoners. *See, e.g.*, *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance . . . or even three") (cleaned up); *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("When a

plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference.").[9] And even were Mr. Daugherty's claim against Wexford more narrowly drawn—alleging, for example, that Wexford adopted a policy of indifference to the risks posed by not having an optometrist on staff for a prolonged period—it would still fall short on the pleadings. The SAC alleges no facts to plausibly support an inference that the absence of an optometrist at Dixon was the product of a Wexford policy, much less one that was deliberately indifferent to risks to the health of inmates. Accordingly, Mr. Daugherty's § 1983 claim against Wexford also fails.

**F. State Law Claim**

Just as Mr. Daugherty does not state specific facts indicating that the defendants were deliberately indifferent, he does not plead facts to show that their conduct was extreme and outrageous, that they intentionally inflicted emotional distress, nor that he experienced emotional distress of any kind. Mr. Daugherty's conclusory allegations are insufficient to state a claim for intentional infliction of emotional distress.

\* \* \* \* \*

For the reasons stated, the SAC is dismissed in its entirety. As the plaintiff has requested leave to amend in the event of dismissal, and has not had the opportunity to replead in response to

---

[9] In one of his grievances, Mr. Daugherty alleges that the "liaison [at UIC] informed [the Sheridan nurse that] the person responsible that works for Wexford at Dixon CC did not follow established policies, failing or refusing to send the referral form from the outside medical provider." SAC Ex. N. He does not allege who, specifically, made this error, and isolated incidents of mistake or even bad acts, "do not add up to a pattern of behavior that would support an inference of a custom or policy, as required to find that Wexford as an institution/corporation was deliberately indifferent." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). Once he reached Sheridan, moreover, he was promptly rescheduled for an appointment at UIC.

13

a judicial ruling about the adequacy of his allegations, the dismissal is without prejudice. *See, e.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."). The Court expects, however, that any third amended complaint will heed the requirement to plead facts sufficient to state a plausible claim as to each defendant named.

Date: February 21, 2020

John J. Tharp, Jr.
United States District Judge